**In re Eric B. GANDERS and Kelli A. Ganders, Debtors.**

**Bankruptcy No. 94–02088–W.**

United States Bankruptcy Court, N.D. Oklahoma.

Jan. 10, 1995.

---

**32.** See Exhibits 11, 12 and 13 wherein the parties continued to substitute and talk of the release of certain collateral.

Jack A. Martin, Tulsa, OK, for debtors.

J. Michael Morgan, Tulsa, OK, for Sears.

### ORDER GRANTING IN PART AND DENYING IN PART DEBTORS' "MOTION TO AVOID LIEN ..."

MICKEY DAN WILSON, Chief Judge.

This contested matter was submitted for decision on agreed facts and briefs. Upon consideration thereof, and of the record herein, this Court, pursuant to F.R.B.P. 7052 and 9014, finds, concludes, and orders as follows. Procedural history of the matter is included in "Findings of Fact."

### FINDINGS OF FACT

Eric B. Ganders and Kelli B. Ganders ("Ganders") are husband and wife. In 1982 and 1983, the Ganders bought various consumer items from Sears, Roebuck and Company ("Sears"). The items were bought on credit in a series of transactions; the purchase prices were charged to a revolving charge account. The dates of the purchases, brief descriptions of the items, and purchase prices are as follows:

| Date of Purchase | Item | Purchase Price |
| --- | --- | --- |
| 08/30/92 | Mower | $429.99 |
| 10/01/92 | Crafter & Adapter | $145.12 |
| 11/01/92 | Washer | $451.49 |
| 12/01/92 | Video Games | $ 80.54 |
| 12/06/92 | Video Games | $ 80.54 |
| 12/30/92 | Camcorder | $983.58 |
| 05/24/93 | Router | $118.24 |
| 06/19/93 | Freezer | $214.99 |

—see Sears' brief, p. 1. During 1992 through 1994, debtors made some payments on the accrued charges. Sears applied these payments, first against finance charges ("f/c") on the entire account, then against the purchase price of the earliest-purchased item (the mower), as follows:

1992:

| PAYMENTS—F/C | | MOWER | | |
|---|---|---|---|---|
| | $70.00 | MOWER | $429.99 | |
| | $26.67 | | − $43.33 | |
| | $43.33 | | $386.66 | MOWER BALANCE |

1993:

| PAYMENTS—F/C | | MOWER | | |
|---|---|---|---|---|
| | $595.00 | MOWER | $386.66 | |
| | $430.36 | | − $164.64 | |
| | $164.64 | | $222.02 | MOWER BALANCE |

1994:

| PAYMENTS—F/C | | MOWER | | |
|---|---|---|---|---|
| | $399.00 | MOWER | $222.02 | |
| | $281.87 | | − $117.13 | |
| | $117.13 | | $104.89 | MOWER BALANCE |

—see Sears' brief, ex. A. These figures show that, after buying the mower in August 1992, the Ganders paid a total of $1,064.00 to Sears on their revolving charge account.

On July 20, 1994, the Ganders filed their petition for relief under 11 U.S.C. Chapter 7 in this Court. On October 20, 1994, the Ganders by their attorney filed a "Motion to Avoid Lien and Supporting Citations." Therein debtors asserted that Sears held a non-purchase-money security interest in the mower which debtors had bought on 8/30/92 and the washer which debtors had bought on 11/1/92; and asked this Court to avoid such lien pursuant to 11 U.S.C. § 522(f)(2)(A), corresponding to 11 U.S.C. § 522(f)(1)(B)(i) (as amended 11/22/94). Sears objected; both parties filed briefs; at hearing on December 20, 1994, the Court determined that the matter was amenable to submission on the briefs; and thereafter the matter was taken under advisement.

### CONCLUSIONS OF LAW

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K), (O), 11 U.S.C. § 522. ■ 11 U.S.C. § 522(f)(2)(A), now § 522(f)(1)(B)(1), permits avoidance of "a ... nonpurchase-money security interest in any ... household furnishings, household goods ... [or] appliances" which are otherwise exempt under State law, see 11 U.S.C. § 522(b)(1), (2)(A), 31 O.S. § 1(B). The sole issue raised by the parties is whether or to what extent the mower and washer are subject to a purchase-money security interest. "The Bankruptcy Code does not define 'purchase money security interest.' For this definition, the courts have uniformly looked to the law of the state in which the security interest is created," In re Billings, 838 F.2d 405, 406 (10th Cir.1988).

The Ganders' basic position is that the mower and washer, plus "crafter and adapter" purchased meanwhile, cost a total of $1,026.60; that the Ganders have paid Sears a total of $1,064.00; that the Ganders' payments should be applied against the earliest charges on their account, according to the rule of "first in, first out" or "FIFO;" and that therefore, the Ganders have paid off the purchase price of the mower and washer, and any lien which Sears retains on those items is of non-purchase-money type.

■ Sears replies that the Ganders have omitted Sears' finance charges from their calculations; that the Ganders' payments must be applied first against the finance charges, and only then against the purchase prices of the items; and that when the finance charges are taken into account, the Ganders have not yet fully paid the purchase prices of the mower and washer. Sears relies on an Oklahoma statute, namely 14A O.S. § 2–409(2), which provides as follows:

Payments received by the seller upon a revolving charge account are deemed, for the purpose of determining the amount of the debt secured by the various security interests, to have been applied first to the payment of credit service charges in the order of their entry to the account and then to the payment of debts in the order in which the entries to the account showing the debts were made.

According to Sears, this statute means that *all* finance charges (or "credit service charges" in the language of the statute) are paid off first, and only then can any balance left after paying off the finance charges be applied against *any* debt for unpaid purchase price.

The Ganders do not dispute the applicability of this statute. They do dispute Sears' reading of it. According to the Ganders, this statute means that finance charges are broken down into parts corresponding to separate items charged; and any payment is applied, *first* to the finance charge on the earliest item, *then* to the unpaid purchase price owing on that item, *then* to the finance charge on the next earliest item, *then* to the unpaid purchase price owing on that item, and so on.

The record does not indicate what finance charge should be attributed to what particular item. Even if this Court accepted the Ganders' argument in principle, the Court could not apply it for lack of evidence. However, there is a more fundamental difficulty.

■ It appears to this Court that the natural reading of the statute is that *all* finance charges are paid off first. The statute declares that "credit service charges," in the plural, are paid "in the order of their entry to the account *and then*" all unpaid purchase prices are paid off "in the order in which the entries to the account showing the[se] debts were made" (emphases added). Absent convincing indications to the contrary, a statute is interpreted and applied as its language reads. As against the language of this statute, the Ganders offer the following arguments: (1) "The approach of Sears ... would never allow the purchase price to be paid off" and (2) if Sears is right, "FIFO application would be non-existent," Ganders' brief p. 2. These arguments are not convincing. According to Sears' figures, the Ganders themselves came within $104.89 of paying off the purchase price on the mower. It is not Sears' fault if the Ganders' many purchases and few payments resulted in a large amount of each payment being applied to finance charges. Further, this Court is not concerned with some generalized rule of FIFO, but with a particular Oklahoma statute. If this statute modifies the pure FIFO approach, so be it. And that is what this statute does.

■ However, even according to Sears' figures, the Ganders have paid off all but $104.89 of the purchase price of their earliest-charged item, the mower. It follows that Sears' lien on the mower retains its original purchase-money character only to the extent of $104.89. Except to the extent of $104.89, Sears' lien on the mower is of non-purchase-money type and is avoidable.

Accordingly, the Ganders' motion to avoid Sears' lien is granted in part, such that Sears' lien on the mower is avoided except to the extent such lien secures a debt in the amount of $104.89, but is otherwise denied.

AND IT IS SO ORDERED.